No. 22-3119

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**
_____

**UNITED STATES OF AMERICA** , PLAINTIFF-APPELLEE,

v.

**TRAVIS VONTRESS**, DEFENDANT-APPELLANT,

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS,
THE HONORABLE ERIC F. MELGREN
D.C. No. 6:20-CR-10028-EFM-19
_____

**PETITION FOR REHEARING EN BANC**
_____


Katayoun A. Donnelly
*AZIZPOUR DONNELLY LLC*
2373 Central Park Blvd., Suite 100
Denver, CO 80238
720-675-8584
katy@kdonnellylaw.com

*Member of the Tenth Circuit's CJA Appellate Panel*

*Counsel for Travis Vontress*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

REASONS FOR REHEARING EN BANC .................................................... 1

    I.     Application of plain error review effectively rewards prosecutorial misconduct ............................................................................................... 4

    II.    Allowing appellate courts to function as factfinders on direct appeal poses serious constitutional concerns. ................................................... 5

        Statement of Relevant Facts ............................................................... 5

        The Panel Opinion Conflicts with Precedent ................................... 8

RULE 35 STATEMENT ............................................................................. 13

CERTIFICATIONS ..................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Bessemer City*,

470 U.S. 564 (1985) ................................................................................. 9, 10, 13

*Greer v. United States*,

593 U.S. 503 (2021) ..................................................................................... 5, 6, 14

*Lafler v. Cooper*,

566 U.S. 156 (2012) ............................................................................................. 12

*Missouri v. Frye*,

566 U.S. 134 (2012) ............................................................................................. 13

*Sarr v. Gonzales*,

474 F.3d 783 (10th Cir. 2007) ......................................................................... 9, 13

*United States v. Bagley*,

473 U.S. 667 (1985) ....................................................................................... 10, 13

*United States v. Brooks*,

438 F.3d 1231 (10th Cir. 2006) ............................................................................. 9

*United States v. Dalton*,

132 Fed. App'x. 433. (4th Cir. 2005) ................................................................... 10

*United States v. Jolley*,

252 Fed. App'x. 669 (5th Cir. 2007) ...................................................................... 9

*United States v. Smalls*,

605 F.3d 765 (10th Cir. 2010) ............................................................................... 3

*United States v. Uscanga-Mora*,

   562 F.3d 1289 (10th Cir. 2009) ........................................................................ 5, 6, 14

**Rules**

Fed. R. App. P. 32(a)(5) ............................................................................................ 15

Fed. R. App. P. 32(a)(6) ............................................................................................ 15

Fed. R. App. P. 35(b)(2)(A) ...................................................................................... 15

**REASONS FOR REHEARING EN BANC**

While the Constitution provides a framework for justice, the modern plea-bargaining system has evolved in ways that concentrate significant power in the hands of prosecutors. This system departs from the jury-trial-centered model the Founding Founders envisioned, raising questions about fairness, coercion, and the balance of power in the criminal justice system. *Brady* obligations are a vital safeguard against prosecutorial overreach in the plea-bargaining system, helping to ensure that defendants make informed decisions and that prosecutors adhere to their ethical and legal duties. Rigorously applying *Brady* in the context of plea bargaining is essential for a justice system that values fairness, transparency, and the constitutional protections envisioned by the Founding Fathers.

The events forming the factual basis for Mr. Vontress' arguments on appeal occurred only months after the United States District Court, in *United States v. Carter*, Case No. 16-20032-02-JAR (D. Kan.), in an extraordinary order, held the Kansas US Attorney's office on contempt of court "for failing to cooperate and preserve evidence in a special master's investigation into recordings of attorney-client phone calls." https://www.abajournal.com/news/article/federal-judge-holds-us-attorneys-office-in-contempt-in-probe-of-recorded-attorney-client-calls (last visited Nov. 25, 2024) (in her August 13 2019 order U.S. District Judge Julie Robinson found that "the government employed a 'wholesale strategy to delay, diffuse and deflect' during the investigation" and "management defied the court's orders and directives, continued to fail to preserve

such that years of documents were potentially lost, and then only produced what they chose to produce.").

In May 2020, in Mr. Travis Vontress' case, the Kansas US Attorney Office ("KUSAO") learned that its main witness against Mr. Vontress at trial, Mr. Trevor Wells, and Mr. Vontress' sole co-defendant at trial, Mr. Kevin Lewis, had been conspiring to kill some of their co-defendants, including Mr. Vontress. ROA, Vol. 4, p. 285 ¶¶ 22-24.

KUSAO, consistent with its pattern (as established in *Carter*), failed to disclose this critical information to Mr. Vontress' defense team at any point: not in May 2020, not prior to his trial, not during his trial, and not after the trial, prior to sentencing. The murder plot was only discovered by Mr. Vontress' appellate counsel because Mr. Lewis' PSR was mistakenly included in the combined record on appeal. But for that error, this further violation of criminal defendants' constitutional rights by the KUSAO would have remained entirely hidden.[1]

This appears to align with a pattern of disregard for the constitutional rights of criminal defendants. *See, e.g.,* https://www.abajournal.com/news/article/federal-judge-holds-us-attorneys-office-in-contempt-in-probe-of-recorded-attorney-client-calls ("One of the former prosecutors who used the calls testified she had discussed the issue with

---

[1] A Chicago Tribune study counted 381 homicide convictions vacated due to Brady violations from 11,000 criminal cases surveyed between 1963 and 1999, but concluded that these findings reflected only "a fraction" of the true number of Brady violations, in part because violations are "by design hidden and can take extraordinary efforts to uncover." Kenneth Armstrong & Maurice Possley, *The Verdict: Dishonor*, CHI. TRIB., Jan. 10, 1999, at 1, available at http://www.chicagotribune.com/news/watchdog/chi-020103trial1,0,479347.story.

other federal prosecutors during lunchtime conversations. Their conclusion was that phone calls placed by detainees to their lawyers weren't privileged because they were on notice the call was being recorded. ***The group*** also concluded that if lawyers were "stupid enough" to talk to their clients over the phone, ***prosecutors had no obligation to disclose the recorded calls***." (emphasis added)); *United States v. Carter*, Case No. 16-20032-02-JAR (D. Kan.), Doc. 758, at 115 ("[T]he USAO's regular practice was to not disclose to defense counsel that they had acquired and/or accessed attorney-client calls. Tomasic testified that Oakley advised her that he had heard an attorney-client call but ***did not disclose because of "litigation risk" and "hassle."*** (emphasis added)).[2]

Because some of the issues arising from KUSAO's conduct addressed in *Carter* are currently pending before the *en banc* panel of this Court in *United States v. Hohn*, Case No. 22-3009, Mr. Vontress' request for an *en banc* hearing presents a unique opportunity for the Court to address the appropriate judicial response to this pattern of prosecutorial misconduct. Resolving this issue would vindicate the constitutional rights of criminal defendants and restore trust in the fairness of the criminal justice system within the Tenth Circuit.

A hearing on remand in this case, by allowing an inquiry into KUSAO's pattern of

---

[2] Mr. Vontress respectfully requests that the Court take judicial notice of the Honorable Julie Robinson's specific findings in *United States v. Carter*, Case No. 16-20032-02-JAR (D. Kan.), Doc. 758, at 115 ("[T]he USAO's regular practice was to not disclose to defense counsel that they had acquired and/or accessed attorney-client calls. Tomasic testified that Oakley advised her that he had heard an attorney-client call but ***did not disclose because of "litigation risk" and "hassle."*** (emphasis added)). *See United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (a court may take judicial notice of docket information from another court).

misconduct from *Carter* to *Vontress*, would demonstrate the Court's commitment to upholding the highest standards of integrity among federal prosecutors—most of whom, unlike those implicated here, have faithfully proven their dedication to justice throughout decades of practice in this Circuit. The panel opinion, however, has preemptively denied this opportunity.

Against this backdrop, the *Vontress* Panel's opinion raises significant concerns.

## I. APPLICATION OF PLAIN ERROR REVIEW EFFECTIVELY REWARDS PROSECUTORIAL MISCONDUCT

Given the inherently concealed nature of *Brady* violations, the *Vontress* Panel's application of the plain error standard of review, Slip Op. 7-8 (Attached)—requiring an objection to a violation the defense could not have known about due to the prosecution's conduct—is deeply troubling. Applying the plain error standard, rather than *de novo* review, conflicts with the holding of the Supreme Court and effectively rewards KUSAO for its intentional violations of criminal defendants' rights by taking away their opportunity for raising contemporaneous objections. *Greer v. United States*, 593 U.S. 503, 512 (2021) (plain-error standard does not apply where defendant had no opportunity to object); *United States v. Uscanga-Mora*, 562 F.3d 1289, 1294 (10th Cir. 2009) ("[T]he federal rules provide for plain error review only when counsel has been given, but has not taken advantage of, an opportunity to voice his or her objection; where no such opportunity was afforded in the district court, our normal standards of review pertain."). This approach significantly increases the burden on defendants and constitutes a further violation of their constitutional rights to due process and equal protection.

## II. ALLOWING APPELLATE COURTS TO FUNCTION AS FACTFINDERS ON DIRECT APPEAL POSES SERIOUS CONSTITUTIONAL CONCERNS.

### *Statement of Relevant Facts*

### *The government charged twenty-four defendants for participating in a drug trafficking organization*

The government's 55-count sealed indictment charged Mr. Vontress and 23 other defendants with participating in an alleged drug trafficking organization in Wichita, Kansas. Vol. 1, pp. 153-211. It included charges related to five drug-specific distribution conspiracies that allegedly operated between May and July of 2019 and a number of other associated drug- and gun-related crimes. *Id*. It also alleged that from April through July of 2019 Oklahoma State Penitentiary inmates Travis Knighten (Mr. Vontress' cousin) and Armando Luna, using contraband cellular telephones, orchestrated several drug conspiracies in and around Wichita, Kansas. Vol.1, pp. 734-798.

### *Twenty-two defendants pled guilty and two were convicted by jury*

Of the 24 defendants, only two, Mr. Vontress and Mr. Lewis, proceeded to trial. Vol. 6, p. 55. The government's case against Mr. Vontress was based on evidence derived from wiretap interceptions introduced mainly through FBI Special Agent Cameron Heath, Vol. 6, pp. 370, 593, 878, 1075, 1299, 1548, and on the testimony of Mr. Trevor Wells (Mr. Knighten's brother and Mr. Vontress' cousin), who portrayed Mr. Vontress as the treasurer during his less than two months involvement. *Id*. p. 702-47; *id*. p.744.

As the only co-defendants during the two-week trial, Mr. Vontress and Mr. Lewis and their respective counsel were seated together at the defense table. The jury convicted

both. *Id.* pp. 2048-2052, 2052-5205.

**KUSAO** *knew about the plot to kill Mr. Vontress*

Mr. Vontress and Mr. Lewis both filed timely notices of appeal (as did Mr. Otis Ponds, a co-defendant who had entered into a plea agreement with the government). The consolidated record reveals that as early as May 2020, KUSAO knew, based on reports from FBI confidential sources, that Mr. Wells and Mr. Lewis were trying to kill some of their co-defendants, including Mr. Vontress. Vol. 4, p. 285 ¶¶ 22-24; ROA-Volume 6, p.2092, ll.4-17; p.2094, l. 24-p.2095, l. 18; p.2100, l. 16-p.2101, l.; p.2118, l. 13-p.2119, l. 23; , p.2130, l.19-p.2131, l.3. The government, however, did not disclose this information.

**KUSAO used Mr. Wells as its main witness at trial without disclosing that he had conspired with Mr. Lewis to kill suspected witnesses against them, including Mr. Vontress, in violation of the district court's order that had established specific deadlines for *Brady/Giglio* disclosures**

The trial court's orders required the government to "***immediately***" comply with *Brady* and *Giglio*, specifying that "[i]n the production of discovery, ***Brady*** **and** ***Giglio*** **trump** ***Jencks***. That is, if material qualifies as either *Brady* or *Giglio*, then **it must be provided** as directed by Section 6, above, even *if it otherwise qualifies as Jencks Act material*." ROA, Vol. 1, at 243-44 (emphasis added); *see also id.,* at 239-40, 241-42 (Pretrial and Criminal Case Management Order, Sections 5, 6, 8). The government acknowledged these orders in its Jencks Act Notice. *Id*., Vol. 1, at 939 ("The government is also mindful of its independent obligation to disclose *Brady* and *Giglio* material early enough so that the defense can use it effectively at trial."). *To this date, however, the*

*government has not provided any information on when and how it produced the reports*
*supporting paragraph 22 (describing Mr. Wells' involvement) of Mr. Lewis' Presentence*
*Investigation Report. Id.*, Vol. 6, at 285.

The government did not call as witnesses at trial the confidential informants whose statements it had withheld. *Id.*, Vol 1., at 938-39 (Jencks Act Notice). And the proffer it prepared for Mr. Wells has no mention of the attempted murder of Mr. Vontress by Mr. Wells and his co-conspirator, Mr. Lewis. *See* Attachment A to Mr. Vontress' Motion to Supplement the Record (Mr. Wells' proffer).

After Mr. Vontress filed his opening brief in this appeal, the government, in an email, for the first time, contended that the discovery material it had produced a few days before the trial (Discovery Round 22) included a report that formed the basis for paragraph 23 of Mr. Lewis' Presentence Investigation Report. But even then, the government still did not indicate when and how it might have produced any information regarding Mr. Wells' plot to murder Mr. Vontress.

The undersigned counsel, upon receipt of the information regarding Discovery Round 22, contacted Mr. Vontress' trial counsel and learned that he had never opened Round 22! Counsel brought this issue to the Court's attention, as soon as it was discovered, in Mr. Vontress' claim for ineffective assistance of counsel in the reply brief and in the motion that was filed simultaneously to supplement the record with Attachments A (Mr. Wells' proffer), B (Discovery Round 22 cover letter), C (Redacted [by the government] informant report regarding Mr. Lewis' attempts to murder Mr. Vontress), and D (the affidavit of Mr. Vontress' trial counsel).

**Impact of the *Brady/Giglio* violation and ineffective assistance of counsel on the outcome of the proceedings**

The government offered Mr. Vontress a plea to an agreed sentencing range of **135-168 month**s and continued to state its interest in entering into a plea agreement with Mr. Vontress through the eve of trial. *See* Attachment D to Mr. Vontress' Motion to Supplement the Record, ¶¶ 7, 9. Mr. Vontress declined the offer because he did not want to be perceived as a snitch. At the conclusion of the trial, Mr. Vontress was sentenced to **295 months** imprisonment, 5 years supervised release, and $800 special assessment fee. Vol. VI., at 2242.

### *The Panel Opinion Conflicts with Governing Precedent*

The Tenth Circuit ordinarily does not allow claims of ineffective assistance of counsel on direct appeal. *See United States v. Brooks*, 438 F.3d 1231,1242 (10th Cir. 2006). This is to ensure that the Court is provided with a developed factual record of the events. *Id.* Here, considering that Mr. Vontress was not informed of the above-mentioned critical facts before his trial and sentencing, there is not a sufficiently developed record regarding application of the *Strickland* test.

Also, the analysis of the reasonable probability prong of *Strickland* requires credibility determination, which must be done by a factfinder. *Anderson v. Bessemer City*, 470 U.S. 564, 574-575 (1985). Appellate courts, however, are not fact finders. *Id.* They can review the fact-finder's findings of fact for clear error but they themselves do not engage in factfinding. *Id.*; *Sarr v. Gonzales,* 474 F.3d 783, 789 (10th Cir. 2007) ("Credibility determinations are factual findings subject to the substantial evidence test."

(cleaned up)); *id*. ("We do not weigh the evidence or evaluate witnesses' credibility." (cleaned up)).

It is therefore essential, especially in a case with such a history, that Mr. Vontress be afforded his due process and equal protection rights: the opportunity to develop the facts necessary to establish the totality of the circumstances for the reasonable probability that he would have accepted the 135-months offer had the prosecution disclosed the fact that his cousins and co-defendant were already trying to kill him. *Sarr,* 474 F.3d at 789; *United States v. Jolley*, 252 Fed. App'x. 669, 671 (5th Cir. 2007) (declining to address the issues of "prejudice" and "reasonable probability" in the first instance and remanding to allow the trial court to develop the record); *United States v. Dalton*, 132 Fed. App'x. 433, 435. (4th Cir. 2005) ("Because resolution of the ineffectiveness claim turns on credibility, we vacate and remand for further proceedings.").

The *Vontress* Panel struck the affidavit from Mr. Vontress' trial counsel and Mr. Wells' proffer. Then, contrary to precedent from this Court and the United States Supreme Court, it assumed the role of the trial court by making credibility determinations on appeal. In that role, the Panel concluded that Mr. Vontress could not satisfy the reasonable probability prong because it did not believe Mr. Vontress would have accepted the plea if he had known that his co-defendants were already trying to kill him. And in doing so, the *Vontress* Panel did not consider another important aspect of this inquiry as required by the United States Supreme Court, namely, "the totality of the circumstances" "with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not

been misled by the prosecutor's" misconduct. *United States v. Bagley*, 473 U.S. 667, 683 (1985).

If he is given the opportunity to develop the facts, Mr. Vontress will present both lay and expert witnesses, including his trial counsel, at a hearing where the credibility of the witnesses can be properly assessed by the fact-finder, as required by *Anderson*, 470 U.S. at 574-576. He will demonstrate a "reasonable probability" sufficient to undermine confidence in the outcome, consistent with *Anderson* and *Bagley*.

Mr. Vontress' trial counsel's affidavit, which the *Vontress* Panel chose not to consider, affirmed that there was a reasonable probability that Mr. Vontress would have accepted the plea offer and asked for government protection had he known the government's star witness and his co-defendant were actually trying to kill him (especially considering the government's claim that he could have been convicted based on the content of the text messages between Mr. Vontress and Mr. Knighten alone. Gov. Br. at 24). *See* Attachment D to Mr. Vontress' Motion to Supplement the Record, ¶ 9. As such, the trial counsel's deficient performance deprived Mr. Vontress of the opportunity to negotiate a much less severe sentence. The prejudice he suffered (the difference between the 135-months plea offer and 295-month sentence) is undeniable.

Further, there is no evidence to suggest that the government would or could have withdrawn the plea offer once it was accepted or that the trial court would have rejected this plea bargain. Below is the long list of the offers made, accepted, and implemented in this case.

| Travis Knighten | 300 Months prison |
|---|---|
| **Armando Luna** | **350 Months prison** |
| Richard Adams | 144 Months prison |
| Tia Ward | 135 Months prison |
| **Trevor Wells** | **110 Months prison[3]** |
| Dorzee Hill | 87 Months prison |
| Otis Ponds | 80 Months prison |
| Frederick Collins | 72 Months prison |
| Robert Richmond | 60 Months prison |
| Shantus Smallwood | 54 Months prison |
| Kimberly Schmidtberger | 52 Months prison |
| Kevin Walker | 48 Months prison |
| David Bell | 48 Months prison |
| Orlando Hogan | 42 Months prison |
| Derek Hubbard | 36 Months probation |
| Mario Ponds | 33 Months prison |
| Byron Fitzpatrick | 24 Months probation |
| Satoria Hill | 18 Months prison |
| Eric Goodwin | 46 months prison |
| Eddie Washington | 37 months prison |
| Dallas Williams | 24 months prison |
| Trey Martin | Dismissed |

Finally, if given the opportunity to develop his argument through testimony of lay and expert witnesses, Mr. Vontress could establish that:

- First-time offenders can be expected to be extremely, even irrationally, afraid of the consequences of co-operation. Mr. Vontress was no exception. The combination of lack of experience and a fear of the consequences of being called a snitch led him to reject a plea offer, with the

---

[3] Note that not only was Mr. Wells not charged with attempted murder but he did not even receive the sentence enhancement Mr. Lewis received. Despite his significant role in the conspiracy and his attempt to murder Mr. Vontress, he only received 110 months in exchange for testifying against Mr. Vontress (while minimizing Mr. Lewis' role), as the only non-law-enforcement witness who connect Mr. Vontress to the conspiracy. Further, the most notable amount of drugs recovered in this case was from Mr. Wells' residence. ROA, Vol. 6, 1946:19-24; 1955; 1889-890, 1892, 1895:21-22.

naive belief that it would provide him protection.

- The sobering knowledge that the government's star witness (his cousin) and the co-defendant with whom Mr. Vontress would be sitting at the same table throughout the trial, were (with the blessing of his other cousin, the mastermind of the alleged underlying conspiracies) actually trying to kill him would have changed his mind.

- The realization that they had taken concrete steps to hire people to kill him, even though he had not cooperated, would have fundamentally changed Mr. Vontress' evaluation and priorities.

- He would have taken the plea; cooperated, if necessary, and asked for protection.

- Therefore, pursuant to *Lafler v. Cooper*, 566 U.S. 156 (2012) and *Missouri v. Frye*, 566 U.S. 134 (2012), Mr. Vontress would argue that the government should reinstate the 135-months plea offer.

The panel violated Mr. Vontress due process and equal protection rights not only by assuming the role of the factfinder but also by striking the affidavit of his counsel and Mr. Wells' proffer, thereby depriving Mr. Vontress of the opportunity to develop the totality of the circumstances to establish the reasonable probability that he would have accepted the 135-months plea offer.

**Request to unseal the case**

Mr. Vontress also requests that the Court unseal this case.

## RULE 35 STATEMENT

This case satisfies the criteria for rehearing *en banc* because the panel's opinion conflicts with *Sarr v. Gonzales*, 474 F.3d 783, 789 (10th Cir. 2007), as well as the Supreme Court's decisions in *Anderson v. Bessemer City*, 470 U.S. 564, 574-575 (1985), and *United States v. Bagley*, 473 U.S. 667, 683 (1985). These cases consistently hold that determining whether a criminal defendant can meet the reasonable probability prong of *Strickland* requires an opportunity to develop the record and make credibility determinations, both of which necessitate a hearing at the trial-court level.

Appellate courts are not factfinders. The panel, however, struck the affidavit of Mr. Vontress' trial counsel and, on direct appeal, made findings of fact regarding Mr. Vontress' credibility and the reasonable probability that he would have accepted the plea offer.

In addition, the panel's application of plain error review to *Brady/Giglio* violations conflicts with *United States v. Uscanga-Mora*, 562 F.3d 1289, 1294 (10th Cir. 2009) and the Supreme Court's decision *Greer v. United States*, 593 U.S. 503, 512 (2021) and effectively rewards prosecutorial misconduct.

Mr. Vontress respectfully requests that the Court grant rehearing *en banc* to address these conflicts of opinion.

Respectfully submitted this 25th day of November 2024.

/s/ Katayoun A. Donnelly
Katayoun A. Donnelly
AZIZPOUR DONNELLY LLC
2373 Central Park Blvd., Suite 100
Denver, CO  80238
Phone: (720) 675-8584
Email: katy@kdonnellylaw.com

**CERTIFICATIONS**

I certify that the following is true and correct to the best of my knowledge and belief, formed after a reasonable inquiry:

(1) This pleading is proportionally spaced and complies with the applicable type-volume limitations.

(2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 13 pt. Times New Roman.

(3) Any required privacy redactions have been made.

(4) If required to file additional hard copies, the ECF submission is, except for any redactions, an exact copy of those hard copies.

(5) As required by Fed. R. App. P. 35(b)(2)(A), I certify that the attached brief contains 3,371 words.

(6) The ECF submission was scanned for viruses with the most recent version of a commercial virus-scanning program Avast Security Mac (Version 15.9.2), which is continuously updated, and, according to the program, is free of viruses.

(7) On November 25, 2024, I electronically filed the foregoing using the CM/ECF system.

/s/ *Katayoun A. Donnelly*
Katayoun A Donnelly

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 10, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

TRAVIS VONTRESS,

     Defendant - Appellant.

No. 22-3119
(D.C. No. 6:20-CR-10028-EFM-19)
(D. Kan.)

_____

**SEALED**
**ORDER AND JUDGMENT**[*]

_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

_____

Travis Vontress was the treasurer for a drug-trafficking organization that operated around Wichita, Kansas. After the government dismantled the organization, Vontress was charged with multiple conspiracies and substantive offenses. Rather than accept a plea deal, Vontress proceeded to trial where he was convicted on all counts.

On appeal, Vontress alleges that the government suppressed material exculpatory evidence and that he received ineffective assistance of counsel. He

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

also argues that we should suppress wiretap evidence. Finding his arguments unavailing, we affirm.

## BACKGROUND

### I.  Factual Background

Travis Knighten led a drug-trafficking organization while serving a life sentence in Oklahoma state prison. He used contraband cellphones to coordinate drug sales with dozens of subordinates around Wichita, Kansas. Vontress, Knighten's cousin, was the organization's treasurer. As treasurer, Vontress collected proceeds from street dealers to pay the organization's members and allocated funds for new drug purchases.

Knighten's organization was ultimately dismantled by the Federal Bureau of Investigation, using confidential human sources, a pole camera, search warrants, and wiretaps. Through a series of wiretaps, the FBI intercepted phone calls and text messages between Vontress and Knighten in which they coordinated drug transactions and organized funding for large drug purchases.

For example, the government intercepted a call between Knighten and Vontress during which they discussed buying fifteen-to-twenty pounds of methamphetamine. During that call, Vontress said he had $43,000, but Knighten noted they needed $48,600 for the deal. After this call, Knighten texted various subordinates, telling them to bring cash to Vontress's house. Then Knighten texted Vontress and told him to count out the $48,600. The government also intercepted messages between Knighten and his subordinates

that confirmed they bought the methamphetamine and moved it to their stash houses.

Based on the intercepted calls and messages, the government executed a search warrant at Vontress's home. When the officers approached his home, Vontress fled out his backdoor, tossing bags of cocaine as he ran. A Wichita police drone recorded Vontress absconding. While searching the house, the government found two handguns. With this evidence, the government began preparing to indict Vontress and other members of the organization.

## II.    Procedural Background

### A.    District Court Proceedings

The government charged twenty-four members of Knighten's organization in a fifty-five-count indictment. The indictment charged Vontress with three conspiracy counts under 21 U.S.C. § 846 for the organization's distribution of methamphetamine, heroin, and cocaine. The government also charged Vontress with maintaining a drug-involved premises (§ 856(a)), possession with intent to distribute a controlled substance (§ 841(a)(1) and (b)(1)(C)), possession of a firearm in furtherance of a drug-trafficking crime (18 U.S.C. § 924(c)(1)), and two counts of using a communication facility to facilitate a drug-trafficking crime (21 U.S.C. § 843(b)).[1]

---

[1] The government later added charges in a superseding indictment, but the charges against Vontress did not change.

The government promptly arrested Vontress, and he had his initial appearance. During the next several months of discovery, the government produced 60,000 intercepted phone-call recordings and messages, 10,000 hours of pole-camera footage, police reports, downloads from search-warrant-seized phones, drone video, search-warrant photos and reports, arrest interviews, lab results, and firearm reports. After reviewing the discovery, Vontress moved to suppress the wiretap evidence.[2] The motion asserted that the first wiretap lacked authorization from a high-level Department of Justice official, as required by the governing statutory scheme, 18 U.S.C. §§ 2510–20. The district court denied Vontress's motion. *United States v. Lewis*, Nos. 20-10028-11, -15, -19, 2022 WL 486913, at *11–12 (D. Kan. Feb. 17, 2022).

Before trial, twenty-two defendants pleaded guilty, which left Vontress and one of his codefendants, Kevin Lewis, as the two remaining candidates for trial. At the ensuing trial, the evidence against Vontress included the FBI's intercepted calls and messages, the drone video, and testimony from another codefendant, Trevor Wells. Wells, who pleaded guilty and agreed to testify for the government, said that he knew Vontress all his life. Wells described the various roles different members played in the organization and testified that he

---

[2] Knighten moved to suppress the wiretap evidence, and Vontress joined Knighten's motion.

would bring money to Vontress "[b]ecause [Vontress] knew who to pay." R. vol. 6, at 712.

The jury convicted Vontress and Lewis on all counts. At sentencing, the district court calculated Vontress's total offense level as 38 and determined that his insignificant criminal history placed him in a category of I. The district court sentenced Vontress to 295 months' imprisonment—235 months for the drug offenses and 60 consecutive months for the firearm charge. Vontress timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

**B.    Appellate Proceedings**

We originally consolidated Vontress's appeal with the appeals of his codefendants Kevin Lewis and Otis Ponds.[3] Consolidating the appeals gave Vontress access to Lewis's presentence report, which was included in the appellate record. Lewis's PSR reveals that he tried to hire a confidential source to kill Vontress before trial. According to the PSR, Lewis discussed killing Vontress a dozen times during a two-month period. The PSR also notes that Lewis and Wells tried to hire a different confidential source to kill several other codefendants, but that source didn't name Vontress as a potential target.

---

[3] Ponds pleaded guilty, and his agreement reserved his right to an appeal.

At Lewis's sentencing, an FBI agent testified about the PSR to support the government's proposed obstruction-of-justice adjustment.[4] The agent summarized interviews with two informants who were approached by Lewis. The first informant, Sajcha Hobbs, told the agent that Vontress was among the people Lewis "believed were providing information to the Government," and so Lewis wanted to have Vontress killed. R. vol. 6, at 2098. The agent testified that Lewis offered Hobbs "$5,000 to take care of" Vontress. *Id.* at 2096. Lewis also allegedly told Hobbs that Lewis wanted Vontress "floating in the Arkansas River." *Id.* at 2099.

The second informant, James Hayes, relayed to the agent that Lewis and Wells gave him a list of people they wanted killed. Vontress was not on this list. The agent testified that, according to Hayes, Lewis and Wells wanted these people killed to prevent them from testifying and as retaliation for suspected cooperation with the government.[5]

After discovering this information, Vontress moved to have his opening brief sealed. We granted that motion and severed Vontress's appeal from

---

[4] Lewis's sentencing transcript was part of the consolidated record on appeal. The district court held Lewis's sentencing on the morning of June 22, 2023, but the obstruction-of-justice testimony took longer than the district court anticipated. So the district court continued Lewis's sentencing to June 30. On the afternoon of June 22, after hearing Lewis's plot to have Vontress killed, the district court sentenced Vontress.

[5] Based on this testimony, the district court applied the obstruction-of-justice adjustment against Lewis.

Lewis's and Ponds's. Before oral argument, we ordered the courtroom sealed, and we took under advisement Vontress's request to seal the oral argument recording and to issue a decision using pseudonyms and under a different case number.

Before oral argument, Vontress moved to supplement the record on appeal with Wells's proffer, a cover letter for discovery produced by the government, an informant's report about Lewis's attempts to have Vontress killed, and an affidavit from Vontress's trial counsel. We denied the motion.

## DISCUSSION

Vontress challenges his conviction on three grounds. First, he argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that Lewis and Wells were trying to have their codefendants killed. Second, he argues that his plea offer should be reinstated under *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012). Third, he argues that the wiretap evidence should be suppressed because the first wiretap lacked authorization. We consider each in turn.

## I.   *Brady* Violation

Vontress contends that the government violated *Brady* by failing to disclose that Lewis and Wells conspired to have their codefendants killed (the murder-for-hire evidence). But he concedes that in the district court he didn't make a *Brady* objection. So we review for plain error. *United States v. Arellanes-Portillo*, 34 F.4th 1132, 1138 (10th Cir. 2022). Under plain-error

review, Vontress must show: "(1) error, (2) that is plain, (3) which affects [his] substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation omitted).

To prove a *Brady* violation, Vontress must show that the prosecution suppressed evidence that was favorable and material to his defense. *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009). Favorable evidence includes impeachment evidence and exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is material when there is a reasonable probability that its disclosure would have changed the outcome of the case. *United States v. Reese*, 745 F.3d 1075, 1083 (10th Cir. 2014). A defendant satisfies this standard when "the absence of the withheld evidence shakes our confidence in the guilty verdict." *Id.* (citation omitted). Vontress must prove a *Brady* violation by a preponderance of the evidence. *United States v. Durham*, 902 F.3d 1180, 1221 (10th Cir. 2018).

Vontress must prove that the government suppressed the murder-for-hire evidence. *See Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995) ("The first [*Brady*] element requires proof that the 'prosecution' suppressed or withheld the evidence in question."). Though Vontress has shown that the murder-for-hire evidence exists, he has not proved that the government suppressed this evidence. The record is silent on whether the government produced Hobbs's and Hayes's interview reports or otherwise told Vontress about the threats. And Vontress concedes in his reply brief that he doesn't

know whether the government produced the murder-for-hire evidence—he block-quotes an email from the government that says the evidence was included in Discovery Round 22, which he admits that he "never opened." Corrected Reply Br. at 4. Though Vontress allegedly learned about the murder-for-hire evidence for the first time on appeal, he still must prove that the government suppressed the evidence. *See Smith*, 50 F.3d at 824. On this record, we cannot conclude that the government did so.

Even if we assume that the government suppressed the murder-for-hire evidence, Vontress has not shown that it was favorable. To prove favorability, Vontress must show that the murder-for-hire evidence is either exculpatory or impeachment evidence. *See Strickler*, 527 U.S. at 281–82. Exculpatory evidence "tends to establish a criminal defendant's innocence." *Fontenot v. Crow*, 4 F.4th 982, 1066 (10th Cir. 2021) (cleaned up). To show his innocence of the conspiracy and substantive drug-related charges, the murder-for-hire evidence must "tend[] to establish" that Vontress did not join the conspiracy or possess drugs and guns. *See id.* But the murder-for-hire evidence merely shows that Lewis and Wells wanted Vontress killed so he could not incriminate them.[6]

---

[6] Vontress asserts that Wells, in addition to Lewis, tried to have him killed. We lack a sufficient record to determine whether Wells helped plot to kill Vontress. Lewis's PSR reflects that Lewis tried to have Vontress killed and that Lewis and Wells together tried to have others killed. Giving Vontress the benefit of the doubt, we assume for the *Brady* analysis that Wells also tried to have Vontress killed.

Rather than showing Vontress's innocence, the evidence tends to establish his guilt: to have enough incriminating information that his co-conspirators would want him "take[n] care of," Vontress likely was involved in the organization. R. vol. 6, at 2096.

Vontress also could not have used the murder-for-hire evidence to impeach Wells's testimony. *See* Irving Younger *The Art of Cross-Examination*, 1 (1976) (explaining that the purpose of an impeachment cross-examination is to "attack the credibility of the witness and persuade the jury . . . that the witness is not worth believing"). Wells testified that he personally delivered drug proceeds to Vontress. So to impeach that testimony, Vontress would have to give the jury a reason to discredit Wells. But the murder-for-hire evidence provides no such reason. The evidence shows that Wells wanted Vontress killed to prevent him from testifying. But this showing would have been unlikely to dissuade the jury from believing that Wells testified truthfully about delivering drug proceeds to Vontress. Because the murder-for-hire evidence would not exculpate Vontress or impeach Wells, we rule that the evidence is not favorable to Vontress.

But even if the murder-for-hire evidence was favorable, it is nevertheless immaterial. *See Reese*, 745 F.3d at 1083 (noting that evidence is material when it "shakes our confidence in the guilty verdict" (citation omitted)). Compared to the other trial evidence, Wells's hour-long testimony added little. Throughout the six days of evidence, the jury heard countless calls and messages where

Vontress organized drug deals; the jury watched Vontress fleeing his house and tossing cocaine; and the jury saw the firearms seized from his house. Vontress cannot undermine the evidence of his own criminal conduct with Lewis's and Wells's actions, which were tangential to and occurred after Vontress committed the crimes. Our confidence in his convictions remains firm.

Rather than show how this evidence is favorable and material, Vontress makes six conclusory statements to support his *Brady* claim.[7] But he fails to "advanc[e] reasoned argument[s]." *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (citation omitted). Vontress's brief does not identify his "contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relies."[8] *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (quoting Fed. R. App. P. 28(a)(8)(A)). His "cursory statements, without supporting analysis and case law, fail to constitute the kind

---

[7] These six arguments are (1) that he would have shown why Wells testified against Vontress but not Lewis; (2) that he would have confronted the government's theory at trial; (3) that he would have testified; (4) that he would have severed his trial from Lewis's; (5) that he would have accepted the government's plea offer; and (6) that at sentencing he would have explained why he did not accept the government's offer.

[8] For example, Vontress's argument that he would have testified at trial comprises one sentence of his brief: "Knowledge of the fact that both Mr. Lewis and Mr. Wells tried to kill [Vontress] would have changed not only Mr. Vontress' decision on whether to testify at trial but also many other decisions regarding his defense and relations with his co-defendant." Am. and Suppl. Op. Br. at 9.

of briefing" needed for us to address his arguments. *Id.* at 1105. We decline to make his arguments for him.

For the reasons stated above, Vontress has failed to show a *Brady* violation. Because he has not shown error, we need not address the other elements of plain-error review.[9]

## II.    Reinstating Plea Offer

Vontress next argues that we should reinstate his plea offer under *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012). In support, Vontress claims that he received ineffective assistance of counsel because his counsel allegedly failed to open Round 22 of Discovery, which allegedly contained the murder-for-hire evidence. Vontress asserts that he would have accepted the government's plea offer had his counsel opened that discovery and relayed its contents to Vontress.

We routinely deny ineffective-assistance-of-counsel claims on direct review because we lack a record to evaluate defense counsels' decisions. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc)

---

[9] In his reply brief, Vontress categorizes the government's alleged withholding of the murder-for-hire evidence as violations of the Equal Protection and Confrontation Clauses. Vontress neglects to analyze these clauses separately from his *Brady* arguments. Even if his reply brief can be read as making Equal Protection and Confrontation Clause claims, those are waived. *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) ("[W]e generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived.").

("[Ineffective-assistance-of-counsel] claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."). This case is no exception—we cannot evaluate Vontress's claim on the merits because we do not know (1) whether the government produced the murder-for-hire evidence, (2) whether Round 22 of Discovery contained the evidence, or (3) whether Vontress's counsel failed to open the discovery. Because we cannot address the ineffective-assistance claim, we affirm Vontress's convictions. But for completeness, we turn briefly to *Frye* and *Lafler* to see whether those cases provide Vontress relief, as he claims.

*Frye* and *Lafler* discuss ineffective assistance of counsel during plea bargaining. In *Frye*, the defendant was charged with a felony for driving with a revoked license. 566 U.S. at 138. The prosecution offered a choice of two plea deals: plea to the felony with a ten-day recommended sentence, or plea to a misdemeanor with a ninety-day recommended sentence. *Id.* at 138–39. These offers were communicated to defense counsel, but counsel never relayed the offers to the defendant. *Id.* at 139. The defendant later pleaded guilty to the felony without an agreement and received a three-year sentence. *Id.*

The Supreme Court reaffirmed that the *Strickland* standard governs counsel's performance during the plea-bargaining process.[10] *Id.* at 148. The

---

[10] Under *Strickland v. Washington*, a defendant must show "that counsel's performance was deficient" and that the "deficient performance" caused prejudice. 466 U.S. 668, 687 (1984).

Court found that the defense counsel's performance was deficient because counsel failed to communicate the offer and considered whether that performance caused prejudice. *Id.* at 145, 147. The Court framed the prejudice inquiry as whether the defendant would have accepted the earlier offer absent deficient performance. *Id.* at 148. The Court ruled that, to prove the offer would have been accepted, a defendant must show a "reasonable probability" that (1) he would have accepted the original plea offer, (2) the prosecution would not have canceled it, and (3) the trial court would have accepted it. *Id.* at 147. The Court remanded the case because the defendant had not shown the second and third prongs of the reasonable-probability test. *Id.* at 150–51.

In *Lafler*, the Court addressed a slightly different scenario—where a defendant rejects a favorable plea offer and proceeds to trial. 566 U.S. at 161, 163. After applying the reasonable-probability test from *Frye*, the Court addressed "what constitutes an appropriate remedy" when a defendant rejects a plea offer and then receives "a more severe sentence" after trial. *Id.* at 170. The Court ruled that, depending on the circumstances of the case, a trial court should "exercise discretion in determining whether the defendant should receive" the plea-offer sentence, "the sentence he received at trial, or something in between."[11] *Id.* at 171.

---

[11] The Court also explained that if a plea offer "was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion

(*footnote continued*)

*Frye* and *Lafler* do not provide us grounds to reinstate Vontress's plea offer. Even assuming that Vontress's counsel was deficient, Vontress has not shown a "reasonable probability" that he would have accepted the government's plea offer had he known about the murder-for-hire evidence. *See Frye*, 566 U.S. at 147. He claims that he declined the government's offer because he feared retaliation from his codefendants. But he has not explained why he would have changed his decision after learning that his fears were true. Instead, he says that he would have asked the government for protection, but he does not allege that the government would have agreed to provide it. We doubt that he would have pleaded guilty after learning that his fears were true and without guaranteed protection. Because Vontress has not shown a reasonable probability that he would have pleaded guilty, we need not "exercise discretion in determining whether" he should receive a lesser sentence. *Lafler*, 566 U.S. at 171.

### III. Wiretap Authorization

Vontress argues that we must reverse his conviction because the FBI's first wiretap lacked DOJ authorization. Vontress alleges that the signatures on the authorization memos differ from the name "Bruce Swartz," the Deputy Assistant Attorney General who authorized the wiretap. We address this

---

after trial," then the "proper exercise of discretion . . . may be to require the prosecution to reoffer the plea proposal." *Lafler*, 566 U.S. at 171.

identical issue on identical facts in the appeal taken by Vontress's codefendants Lewis and Ponds—the same appeal from which we severed Vontress's. *See generally United States v. Lewis*, Nos. 22-3125, 22-3126 (10th Cir. September 10, 2024). There, we hold that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20, the statute governing wiretaps, requires that the authorizing DOJ official be identified. *See generally Lewis*, Nos. 22-3125, 22-3126. In *Lewis*, we rule that the wiretap at issue—the same wiretap that Vontress challenges—was sufficiently authorized, and we decline to suppress any evidence derived from it. *Id.*

Likewise, we decline to suppress the wiretap used against Vontress. Vontress, Lewis, and Ponds were in the same wiretap-authorization boat. The government intercepted their calls from the same wiretaps, they moved to suppress the same wiretaps, and the district court denied their motions in the same order. *See United States v. Lewis*, Nos. 20-10028-11, -15, -19, 2022 WL 486913, at *1, *11–12 (D. Kan. Feb. 17, 2022). On appeal, Vontress makes the same wiretap-authorization arguments that we reject in *Lewis*, Nos. 22-3125, 22-3126. We thus consider the wiretap-authorization issue resolved. *See United States v. Parada*, 577 F.3d 1275, 1280 (10th Cir. 2009) ("[W]hen a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal issue." (quoting *United States v. LaHue*, 261 F.3d 993, 1010 (10th Cir. 2001))). For the

reasons discussed in *Lewis*, we affirm the denial of Vontress's motion to suppress the evidence derived from the wiretaps.

## CONCLUSION

We affirm Vontress's convictions. We order that Vontress's oral arguments be sealed. Because we have sealed this order and judgment, we decline to use a pseudonym and a different case number.

Entered for the Court

Gregory A. Phillips
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

September 10, 2024

Ms. Katayoun A. Donnelly
Azizpour Donnelly
2373 Central Park Boulevard, Suite 100
Denver, CO 80238

**RE:      22-3119, United States v. Vontress [Sealed Case]**
       Dist/Ag docket: 6:20-CR-10028-EFM-19

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:      James A. Brown

CMW/djd